```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                      HAMMOND DIVISION


TRUDY M. ADOBA,                    )
                                   )
Plaintiff,                         )
                                   )
vs.                                )    NO. 2:03-CV-532
                                   )
UNUM LIFE INSURANCE COMPANY        )
OF AMERICA,                        )
                                   )
Defendant.                         )
```

## OPINION AND ORDER

This matter is before the Court on Defendant Unum's Motion for Partial Summary Judgment on the Issue of Damages, filed on April 14, 2005. For the reasons set forth below, the motion is **GRANTED**.

The Court finds Plaintiff would be entitled to a maximum monthly disability benefit of $301.83, if Plaintiff later establishes she otherwise qualifies for benefits. All other issues of Plaintiff's claim **REMAIN PENDING**.

BACKGROUND

Plaintiff, Trudy M. Adoba, was a teacher for 33 years. She was involved in two automobile accidents, which left her disabled and unable to work, beginning around January 25, 2001. She then stopped working, and used up her sick and vacation time, along with unpaid

leave under the Family Medical Leave Act. She originally applied for disability retirement with her employer and later changed her retirement to a regular retirement. Plaintiff then applied for long-term disability benefits under Defendant, Unum Life Insurance Company of America's ("Unum"), insurance policy. The application was granted, but was later rejected, after it was determined Plaintiff was receiving regular retirement benefits.

Plaintiff then filed the instant action, alleging she is entitled to disability benefits under the policy. Defendant has moved for partial summary judgment on the issue of damages. The issue has been fully briefed and is ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In

deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d  405, 410 (7th Cir. 1988) (emphasis in original); *see also*

*Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The only issue before the Court relates to the amount of damages Plaintiff may be entitled to. Nothing contained in this order should be construed to address the merits of any other elements of Plaintiff's claim. In the instant motion, Defendant only seeks summary judgment on the issue of the amount of the monthly benefit that would be available to Plaintiff, if Plaintiff otherwise qualifies for benefits. As discussed below, the Court finds Plaintiff would be entitled to a maximum monthly benefit of $301.83.

"Under Indiana law, the interpretation of an insurance policy presents a question of law to be decided by the court." *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). "Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985) (citations omitted). If the policy's language is clear and

-4-

unambiguous, it is to be given its plain and ordinary meaning.  *Id.* (citing *Spears v. Jackson*, 398 N.E.2d 718 (Ind. Ct. App. 1980) and *Vernon Fire & Cas. Ins. Co. v. Am. Underwriters, Inc.*, 356 N.E.2d 693 (Ind. App. 1976)).  "An unambiguous provision in an insurance policy must be enforced, even if it results in a limitation of the insurer's liability."  *Cincinnati Ins. Co.*, 40 F.3d at 151 (citation omitted). If, on the other hand, there is an ambiguity in the terms of an insurance policy, the terms should be construed both to favor the insured and to further indemnity.  *Eli Lilly*, 482 N.E.2d at 470 (citing *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1994)).  "In order to apply the rules of construction favoring the non-drafter of insurance contract terms, the language must be ambiguous or of doubtful meaning."  *Id.*; *see also Southbend Escan Corp. v. Fed. Ins. Co.*, 647 F. Supp. 962, 966 (N.D. Ind. 1986) ("To constitute an ambiguity so as to be susceptible of more than one interpretation, it must be shown that reasonably intelligent men upon reading the insurance contract would honestly differ as to its meaning.").

The policy states monthly disability benefits are to be calculated as follows:

> The monthly benefit will be an amount equal to
> the lesser of:
> 1. 60% of the insured's basic monthly earnings;
> or
> 2. 70% of the insured's basic monthly earnings
> less other income benefits shown below . . . .

The specific language at issue in this case is what qualifies as "other income benefits."  The policy defines "other income benefits"

-5-

in part as "[t]he amount of benefits from the employer's retirement plan the insured . . . voluntarily elects to receive as retirement benefits . . . ."

First, Plaintiff argues that in order for money to be considered retirement benefits, it cannot represent contributions made by the employee.  The policy defines retirement benefits as "money which . . . is payable under a retirement plan either in a lump sum or in the form of periodic payments [and] does not represent contributions made by an employee . . . ."  Plaintiff argues she contributed $13,911.55 towards her retirement, while the employer contributed $14,522.41.  Accumulated interest totals $55,931.31.  Plaintiff argues she was responsible for about half of the contributions, and half of the accumulated interest.  Therefore, she argues, the retirement benefits represent contributions made by her, and they should not be included in the off-set calculation.

It first must be noted that Plaintiff's argument contains no legal authority to support her position.  Plaintiff simply makes an unsupported argument. Plaintiff also neglects to mention Indiana Code section 5-10.2-2-2(c).  That statute states:  "[T]he board of the Indiana state teachers retirement fund shall maintain the following separate subaccounts: (1) the annuity savings account [and] (2) the retirement allowance account."  The annuity savings account is funded by employee contributions and interest on those contributions.  Ind. Code § 5-10.2-2-3(a).  The retirement allowance accounts consists of

-6-

the retirement fund, exclusive of the annuity savings account, and is funded solely by employer contributions.  Ind. Code § 5-10.2-6(b)&(c). The undisputed evidence shows Plaintiff elected to receive a 100% lump sum of her annuity savings account.  That money has already been paid to Plaintiff, in that a portion was rolled over to an individual account owned by Plaintiff, and the other portion was paid directly to her.  It is also undisputed that the $1,893.68 that Plaintiff receives monthly is from the retirement allowance account, which is not funded by any of Plaintiff's contributions.  This makes sense, given that her annuity savings account has already been paid out.  It is only this $1,893.68 monthly amount that Defendant seeks to off-set. Despite Plaintiff's unsupported contention to the contrary, the evidence establishes this amount consists solely of employer contributions; therefore, it is subject to the off-set provision.

Even if the annuity savings account and the retirement allowance account are lumped together as Plaintiff suggests, the result would be the same.  The policy defines "retirement plan" as "a plan which provides retirement benefits to employees, and which is not funded *wholly* by employee contributions" (emphasis added).  By Plaintiff's own admission, she did not wholly fund the retirement plan; she only funded approximately one-half of it.  Therefore, the retirement plan would be an eligible one under the terms of the policy.  Furthermore, the end result would be the same, as the only amounts included in the offset calculation would relate to employer-only contributions.

-7-

Second, Plaintiff argues her election to receive retirement benefits was not done voluntarily. Plaintiff points to her deposition testimony, which indicates she did not want to retire, but wanted to continue teaching. It was her disability as a result of the automobile accidents that prevented her from continuing to teach. Plaintiff argues her voluntariness involves her state of mind at the time she made the election, and this question of fact should be left for a jury to decide. However, Plaintiff points to no evidence that her election to receive retirement benefits was anything other than voluntary.

The evidence is undisputed that neither the school, the insurance company, the state, or any other third party, forced or even pressured Plaintiff to elect to receive her retirement benefits.[1] Rather, she chose, or was forced to quit teaching, as a result of her injuries. No one required her to elect to receive her retirement benefits. Broadly stated, she was free to continue living without her retirement benefits, instead choosing to take her retirement benefits at her normal retirement age, with no adverse consequences on her benefits. In effect, Plaintiff argues she could not maintain her standard of living without the benefits, but this does not, standing alone, make her decision involuntary. She made a conscious and informed decision

---

[1] It is important to note that it is undisputed Plaintiff's application for long-term disability benefits was denied months *after* her application for retirement benefits was approved. This shows Plaintiff could not have been forced to apply for retirement benefits as a result of Unum's denial of disability benefits.

to take the benefits now instead of later.  What little evidence Plaintiff does point to shows she was "not really ready to retire," but this goes solely to her actual retirement and not to her election to begin receiving retirement benefits.

Plaintiff also argues "when [Plaintiff] changed her retirement to regular retirement, it was only after she was told to do so." Plaintiff then cites to various pages of her deposition testimony. Plaintiff is attempting to argue her decision was not voluntary as some unidentified individual told her to do it.  A review of the actual deposition testimony shows Plaintiff is misstating the testimony.  The unidentified individual is someone at the Teacher Retirement Bureau.  The deposition is clear:  Plaintiff states the unidentified individual "told me that since I had the formula of 85, I didn't have to request a disability retirement.  I was entitled to a regular retirement."  Adoba Dep., p. 31.  This statement, and other testimony cited by Plaintiff, does not state that she was told to change her retirement election.  Rather, Plaintiff was told she *could* apply for regular retirement benefits.  Plaintiff's argument to the contrary is not supported by the cited evidence.

Unum also makes an interesting policy argument that demonstrates why Plaintiff's argument is untenable.  Under Plaintiff's argument, the "other income benefit" off-set provision as it applies to retirement benefits would *never* apply, because only disabled people would be subject to the provision, they would all receive the

retirement benefits involuntarily as a result of their disability, and none of these people would ever have the retirement benefits subject to the off-set provision.  This result is simply not logical.

In its motion for partial summary judgment, Unum arguments Adoba is at most entitled to the minimum under the policy.  Unum has calculated this amount to be $301.83.  Adoba did not contest this fact, and it is deemed undisputed.  As a result, the Court finds Adoba would be entitled to a maximum monthly benefit of $301.83 if she later establishes she otherwise qualifies for benefits.

The Court is not unsympathetic to Plaintiff's case.  Plaintiff participated in a long-term disability plan, became significantly disabled, and will probably not receive the full benefits she feels entitled to.  However, the contract clearly contains an off-set provision that reduces benefits in situations like this one, where the policyholder receives too much income from other sources.  The Court is bound to enforce the terms of the contract that the parties agreed to.

CONCLUSION

For the reasons set forth above, Defendant Unum's Motion for Partial Summary Judgment on the Issue of Damages is **GRANTED.**

The Court finds Plaintiff would be entitled to a maximum monthly disability benefit of $301.83, if Plaintiff later establishes she

otherwise qualifies for benefits.  All other issues of Plaintiff's claim **REMAIN PENDING**.


DATED:  June 22, 2005                    S/RUDY LOZANO, Judge
                                          United States District Court